## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CAMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCION DE ALIMENTOS, INC. ("MIDA")**<br><br>Plaintiffs,<br><br>vs.<br><br>**DOMINGO EMANUELLI HERNÁNDEZ**, in his official capacity as Attorney General for the Commonwealth of Puerto Rico and **JAIME A. LAFUENTE GONZÁLEZ**, in his official capacity as President of the Bureau of Transportation and other Public Services of the Commonwealth of Puerto Rico,<br><br>*Defendants.* | CIVIL NO. _____<br><br><br>Declaratory Judgment, Preliminary and permanent Injunction |

# VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**NOW COMES** Plaintiff, CAMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCIÓN DE ALIMENTOS, INC. ("MIDA"), on behalf of its members, represented by the undersigned attorneys, and brings this action against DOMINGO EMANUELLI HERNÁNDEZ, in his official capacity as Attorney General for the Commonwealth of Puerto Rico and JAIME A. LAFUENTE GONZÁLEZ, in his official capacity as President of the Transport and Other Public Services Bureau of the Commonwealth of Puerto Rico ("NTSP" for its Spanish acronym), and respectfully **states, alleges and prays**:

## NATURE OF THE ACTION

1.     This action is for the annulment and voiding of freight tariffs illegally promulgated under a purported Circular Letter imposing rates for all on-land cargo transported within the Commonwealth of Puerto Rico. These are in violation of the Puerto Rico Oversight Management and Economic Stability Act[1] ("PROMESA" or the "Act") because they have not been previously submitted for review and approval, by the Fiscal Oversight and Management Board ("FOMB" or the "Oversight Board"), in addition to being contrary to the Fiscal Plan for fiscal year 2020-2021 certified by the FOMB ("Fiscal Plan").

2.     Congress established the FOMB to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to capital markets." PROMESA § 101, 48 U.S.C. § 2121. As part of that mandate, PROMESA gives the Oversight Board authority to review and approve certain proposed governmental rules, regulations, and executive orders to ensure that these "are not inconsistent with the approved Fiscal Plan" and to, among other things, make the Puerto Rico government "a facilitator and not a competitor to private enterprise, and to avoid creating any additional bureaucratic obstacles to efficient [regulations]." *Id*. §§ 204(b)(2)-(4), 48 U.S.C. § 2144(b)(2)-(4).

3.     On January 30, 2020, the NTSP purported to approve the second phase of the "transformation" of the NTSP via Regulation 9156, *Code of Regulations of the NTSP* ("Regulation"). This Regulations is subject to the Oversight Board's Rules, Regulations and Orders Review Policy established pursuant to Section 204(b)(4) of PROMESA, 48 U.S.C. § 2144(b)(4). Notwithstanding, the NTSP has not submitted it for review and approval of the FOMB. Accordingly, the Regulation has not completed the legal process mandated by PROMESA and is not, therefore, effective and in force, and consequently unenforceable.

---

[1] 114 P.L. 187; 130 Stat. 549, June 30, 2016, 48 USC §§ 2101 *et seq.*

4.     The Fiscal Plan for 2020-2021includes certain structural reforms, for, among other things, improve the ease of doing business on the island. Section 10.6 of the Plan requires: (i) the elimination of inefficient on-island freight regulations; and (ii) that the NTSP issue an administrative order eliminating the minimum land freight charge across Puerto Rico. This would improve the ease of doing business in the Commonwealth, thereby encouraging economic growth, broadening, and deepening the tax base, and increasing corresponding tax revenues, thereby helping the Commonwealth achieve fiscal responsibility. PROMESA § 101(a), 48 U.S.C. § 2121(a).

5.     On December 23, 2020, the NTSP, attempting to circumvent the FOMB review and approval process, purported to adopt Circular Letter XXXV-2020 - *Adoption of Temporary Rates* ("Circular Letter"), increasing the tariffs for several categories of transportation, imposing new categories of administrative fines, and setting a minimum wage for Commercial Motor Vehicle operators.

6.     The Circular Letter is also subject to the Oversight Board's Policy and has to be submitted for review and approval by the FOMB. Notwithstanding, the NTSP has not submitted it to be able to enforce the new tariffs, if approved by the Oversight Board. Consequently, the Circular Letter did not complete the legal process mandated by PROMESA and is not, therefore, effective and in force, and consequently unenforceable.

7.     On March 9, 2021, Codefendant Lafuente signed Circular Letter V-2021 by means of which he asserted that the freight tariffs adopted in Circular Letter XXXV-2020 are in full force and effect; and that pursuant to Chapter V of Regulation 9156 a fine of $10,000 is to be imposed for contracting or paying tariffs contrary to those authorized by the NTSP.

8.     By increasing the tariffs the Fiscal Plan seeks to eliminate, the Regulation and the Circular Letters XXXV-2020 and V-2021 are directly inconsistent with the Certified Fiscal Plan for the Commonwealth of Puerto Rico threatening to harm business and economic

growth by increasing transportation costs and imposing fines for not contracting or paying said increased tariffs. The Circular Letter is not only inconsistent with the Fiscal Plan's requirement for deregulating previously regulated sectors, but it expands its reach into private contracts representing a massive shift in the way of doing business on the Island.

9.      The FOMB has repeatedly requested the NTSP to submit for review the proposed regulation and to issue an administrative order eliminating the minimum land freight charge across Puerto Rico.

10.     The NTSP, through its President has effectively rejected the Oversight Board's authority and statutory mandate to review the draft Regulations, understanding it does not have to comply with the FOMB's requests.

11.     The unlawful actions of the NTSP impair or defeat PROMESA's purposes, especially by increasing transportation costs, contrary to the Fiscal Plan and contrary to the need to attract business for economic growth by lowering the cost of commerce and doing business.

12.     The NTSP is enforcing the new charges and has in fact fined MIDA's members ("Members") for allegedly not paying their carriers under private contract those tariffs, infringing thereby their contractual rights. In addition to dramatically altering the historical way of doing business of the members, with a significant adverse consequences in their daily operations.

13.     The implementation and enforcement of the unlawful Regulation and the Circular Letter have caused and will cause the Members concrete economic and non-economic harm by requiring them either to completely overhaul their business models and thousands of contracts that required years of negotiations to comply with the unlawful tariffs, materially increasing their operating costs with the consequential loss of income, and/or be fined and sanctioned for failure to comply therewith. Also, it will increase the prices of the

goods produced and/or distributed by the Members, causing the consumers to suffer the price increases with an irreparable adverse effect in the reputation of the members.

14.     The NTSP's Regulation and Circular Letter are null, void, and unenforceable for being contrary to and in violation of PROMESA which prevails over any general or specific law and/or regulation of the Commonwealth of Puerto Rico inconsistent therewith.

15.     Pursuant to PROMESA § 108(a), 48 U.S.C. § 2128(a), the Governor may not (1) exercise any control, supervision, oversight, or review over the Oversight Board or its activities; or (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of the Act, as determined by the FOMB.

16.     MIDA seeks hereby judgment declaring that the Regulation and the Circular letter are null and unenforceable for being directly inconsistent with the Fiscal Plan and because they have not been submitted to the Oversight Board for review and approval in violation of its Policy, established pursuant to Section 204(b)(4) of PROMESA, 48 U.S.C. § 2144(b)(4).

17.     Plaintiff is also seeking injunctive relief to prohibit Defendants from enforcing the Regulation and the Circular Letter, impose fines and/or any other sanction or penalty for MIDA's members failing to comply therewith, and from intervening with and/or infringing and/or impairing the contractual rights and obligations between the Members and carriers by private contract. Enforcement that, if not enjoined, will continue to materially disrupt the manner the members contract with the carriers.

## PARTIES

18.     Plaintiff MIDA is a non-profit organization created under the laws of the Commonwealth of Puerto Rico. It is the only business entity in the Island that represents hundreds of entrepreneurs in the food sector (wholesalers, retailers, distributors, processors, agro-industrial companies, and affiliates). Its principal place of business is located in

International Marketing Center. North Tower, Rd. 90 # 165, Suite 501, Guaynabo, PR 00968-8058.

19.     MIDA is organized to represent the food distribution and sale industry ("Industry") before government agencies, to promote the development of the Industry in an environment that favors private enterprise, and to defend the interests of the Members and the Industry in general.

20.     The economic and policy interests that MIDA seeks to protect in this lawsuit are germane to its organizational purposes.

21.     Being the relief requested in this Complaint one for the benefit of and applicable to all MIDA's members, based on questions of law, and where no economic damages are sought, the participation of the Members in this litigation is not required.

22.     MIDA has more than 150 active Members with hundreds of businesses from all the sectors of the Industry. The Members, directly or indirectly, transport their goods, to and from their businesses, utilizing freight transportation entities.

23.     Members of MIDA have historically, and as authorized by law, contracted the transport of their goods with carriers under private contracts in which the freight charges are agreed to the satisfaction of the parties. The regulations that the NTSP is pretending to impose materially disrupts the members' operational systems and the manner in which they have related, and do business, with the carriers causing further material damages.

24.     The transportation of the Members' cargo to their clients is not the typical manner of other type of freight, like for example from the piers to a warehouse. Most Members have to supply products to different clients during the day within a route. Several clients are supplied some closer than others, and the tariff is based on packages ("bultos") or boxes. The type of cargo is also paramount with some requiring refrigeration and other special considerations. Most long term private contracts provide minimum freight guarantees and

provide certainty to truckers. This has been the historical manner in which the cargo transportation has been contracted in Puerto Rico. The application of the tariffs in the Circular letter constitutes a material disruption of the businesses of MIDA's Members, impairing their contractual obligations, in violation of their constitutional rights.

25.     MIDA's members are suffering and/or are threatened to suffer grave injury in fact caused by the enforcement of the Regulation and the Circular Letter imposing illegal freight tariffs and by altering pre-existing contractual rights and creating havoc in the Members' operations.

26.     The illegally enacted freight tariffs object of this Complaint materially increases MIDA members' costs of doing business with the consequential losses in the operation of their enterprises, in addition to the adverse effect in their reputation as perceived by the consumers due to the increase in prices.

27.     Defendant Domingo Emanuelli Hernández is the Attorney General of the Commonwealth of Puerto Rico and is sued in his official capacity only.

28.     Defendant Jaime A. Lafuente González is the President of the NTSP and is sued in his official capacity only. Mr. Lafuente González is the state official responsible for the implementation and compliance of the Puerto Rico Public Service Act, Law No. 109 of June 28, 1962, as amended, 27 L.P.R.A. §§ 1001 et seq. As President, he the director of the NTSP and as such is in charge of its operations.

## JURISDICTION AND VENUE

29.     This action arises under the provisions of PROMESA, a federal statute. Jurisdiction is proper under 28 U.S.C. §1331. This Court also has subject-matter jurisdiction over this action pursuant to PROMESA § 106(a), 48 U.S.C. § 2126.

30. This action seeks declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure.

31. Venue is proper in this District under 28 U.S.C. § 139l(b) because defendants are officers of the Commonwealth of Puerto Rico sued in their official capacity and because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS

32. Pursuant to the Act, in 2016, the Congress of the United States enacted PROMESA in an effort to stabilize Puerto Rico's economy and as a comprehensive measure to address Puerto Rico's fiscal, management, and structural problems. To achieve this, the FOMB was created as an entity within the government of the Commonwealth of Puerto Rico with the purpose of providing a method for the entities covered by the Act to achieve fiscal responsibility and access to the capital markets. PROMESA § 101(a), 48 U.S.C. § 2121(a), through the FOMB's independent oversight of the Government's budget and fiscal policies, and by providing a way for the Commonwealth to modify or restructure its debts. PROMESA §§ 405(m), (n), 48 U.S.C. § 2194(m), (n).

33. Under PROMESA, neither the Governor nor the Legislature may (1) exercise any control, supervision, oversight, or review over the FOMB or its activities; or (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of the Act, as determined by the Oversight Board. PROMESA § 108(a), 48 U.S.C. § 2128(a).

34. Each fiscal year during which the Oversight Board is in operation, it shall certify a Fiscal Plan to achieve fiscal responsibility and access to the capital markets through various mechanisms. PROMESA § 201(a), 48 U.S.C. § 2141(a).

35. The FOMB has the authority to establish policies to require its prior approval of a rule, regulation, or executive order proposed to be issued by the Governor or the head of any

department or agency of the territorial government, to ensure such proposed executive actions promote market competition and are not inconsistent with the Certified Fiscal Plan. PROMESA § 204(b), 48 U.S.C. § 2144(b).

36.     On May 9, 2019, the FOMB certified the Fiscal Plan for Puerto Rico corresponding to fiscal year 2019-2020. Measures to reform the ease of doing business are included in Chapter 8. Among the provisions for the Government to be able to strengthen the business environment on the island, including the deregulation of intra-island freight transport, Section 8.3.1 provides:

> **Deregulate on-Island freights**. Reducing the cost of transporting consumer goods and holding inventory will improve the service of carriers and shippers (thereby enhancing competition) and lower the overall cost of doing business on the Island.

37.     Pursuant thereby, on October 31, 2019, the Oversight Board revised its *Review of Rules, Regulations, and Orders Policy* ("October 2019 Policy") established on August 6, 2018, and made it applicable to:

> any rule, regulation, administrative order, or executive order that is proposed to be issued in connection with or that concerns financial aspects of the most recent Certified Fiscal Plan of the Commonwealth (which includes the Executive, Legislative and Judicial branches of government) or any covered instrumentality (excluding municipalities) (the "applicable Certified Fiscal Plan")

38.     On January 30, 2020, the NTSP purported to promulgate Regulation 9156, *Code of Regulations of the Transportation and Other Public Services Bureau* ("Regulation"), submitting it to the Commonwealth Department of State that same day, without having been previously reviewed and approved by the FOMB. In accordance with Section 23.08 of the Regulation, it would take effect on February 29, 2020.

39.     The Regulation is subject to review and approval by the Oversight Board, prior to its enactment pursuant to PROMESA's § 204(b)(4), 48 U.S.C. § 2144(b)(4) and the October 2019 Policy.

40.     The FOMB has communicated to the NTSP, through its President, on numerous occasions, requesting that he submits the "Draft Regulations" for review and commit not to promulgate them absent the Oversight Board's approval, and that failure to do so constitutes a violation of the October 2019 Policy. *See* letter from Natalie A. Jaresko to Omar J. Marrero-Diaz, dated December 24, 2020, copy of which is included as **Exhibit 1**.

41.     The NTSP has rejected the FOMB's authority and legislative mandate to revise the regulations. As of today, the Regulation and the Circular Letter have not been reviewed nor approved by the Oversight Board. *See* **Exhibit 2**.

42.     On May 27, 2020, the FOMB certified the Fiscal Plan for Puerto Rico corresponding to fiscal year 2020-2021. In Chapter 10 of the Plan, the Reform to Facilitate Doing Business is included. Among the deficiencies noted for which Puerto Rico maintains a low and unfriendly classification for doing business, are deficiencies in government regulations, among other reasons for: "**Freight regulations**: Inefficient regulations have inflated transportation costs for businesses across the Island."

43.     Among the measures indicated in Chapter 10 of the Plan to achieve an increase in GNP associated with facilitating doing business in PR, the Plan indicates that the Government should focus on achieving in Fiscal Year 2021, among others, to "[e]liminate inefficient on-Island freight regulations by ending the minimum land freight charge across the Island".

44.     In Section 10.6, the Plan specifically states, as one of the courses to follow to improve doing business in Puerto Rico, the deregulation of freight transportation rates. To this end, the Plan provides:

> The deregulation of land freights would reduce transportation costs for the Puerto Rican business community. For nearly 100 years, the federal Interstate Commerce Commission regulated land freights across the US, creating artificial price floors to support the railroad and trucking

industries and protect them from competition. The elimination of those price floors reduced the cost of truckload-sized shipping costs by 25% between 1977 and 1982 alone.

45.     On December 23, 2020, in defiance of what the Oversight Board instructed and required by PROMESA and the Fiscal Plan and in violation of these, the NTSP issued the Circular Letter XXXV of 2020 - *Adoption of Temporary Rates* (the "Circular Letter"), increasing rates and raising transportation costs. That same day, at 10:53 pm, the NTSP communicated to the FOMB the issuance of the Circular Letter, although not submitting it for review and approval by the latter.

46.     According to Codefendant Lafuente's assertions, misperceiving the authority of the FOMB under PROMESA, the NTSP had to interrupt the tariff regulatory process and impose the "temporary" freight charges because of the Oversight Board, expressing its intention "to intentionally delay the regulatory process of the Agency by requiring the proposed regulation in English, and that it be approved by the [FOMB]." The NTSP further asserted, as part of those intentional acts by the Oversight Board, that it based its requirement on "'FOMB Policy: Review of Rules, Regulations and Orders' as revised on October 31, 2019". Circular Letter, p. 2.

47.     Given the action of the NTSP, the next day, December 24, 2020, the Oversight Board informed the representative of the then Governor of Puerto of the NTSP's violations of PROMESA and reaffirming the FOMB's powers under Sec. 204(b)(4) and the NTSP's failure to comply with such provision (*see* **Exhibit 1**):

> As such, the Draft Regulations are subject to the Oversight Board's Rules, Regulations and Orders Review Policy (the "Policy") established pursuant to Section 204(b)(4) of PROMESA. Yet, the NTSP has not submitted them to the Oversight Board for review and approval in accordance with the Policy.

48.     Specifically, the FOMB determined, and thus communicated in said letter, that:

> The NTSP's actions directly contradict the Fiscal Plan and the mandate to achieve fiscal responsibility. The Fiscal Plan includes certain structural reforms, including improving the ease of doing business on the island. One of the specific measures to advance this reform is "an

administrative order eliminating the minimum land freight charge across Puerto Rico." This measure is intended to improve the ease of doing business in the Commonwealth, thereby encouraging economic growth, broadening and deepening the tax base, and increasing corresponding tax revenues, thereby helping the Commonwealth "achieve fiscal responsibility." See PROMESA § 101(a). By increasing the same tariffs, the Fiscal Plan seeks to eliminate, the Administrative Order is directly inconsistent with the Fiscal Plan.

49.     Given all of the above, the FOMB asked Mr. Marrero to intercede,

to repeal the Administrative Order and prevent the NTSP from implementing the Draft Regulations until the Oversight Board has reviewed and approved them. Please confirm you will do so and a timeline for the reinstallation of the prior tariff regime as soon as possible.

50.     In further defiance of the Oversight Board's requirements, showing no intention of abiding with PROMESA, on March 9, 2021, Codefendant Lafuente signed Circular Letter V-2021 by means of which he asserted that the freight tariffs adopted in Circular Letter XXXV-2020 are in full force and effect; and that pursuant to Chapter V of Regulation 9156 a fine of $10,000 will be imposed for contracting or paying tariffs contrary to those authorized by the NTSP.

51.     As with the Regulations and Circular Letter, Codefendant Lafuente issued Circular Letter V-2021 without prior Oversight Board review and approval in violation of the Policy and PROMESA.

52.     The Governor of Puerto Rico submitted to the FOMB the proposed Fiscal Plan for the year 2021-2022.  In response thereto, on March 15, 2021, the FOMB reacted to the proposal noting that it contains premises that are inconsistent with PROMESA's mandate to achieve fiscal responsibility. *See* copy of the letter, included as **Exhibit 3**. The Oversight Board also determined, with regard to the freight transport rates, as part of improving the business climate to achieve the economic development necessary to meet the objectives of the Act, that:

> The Proposed Plan removes all content related to overhauling property registration and the elimination of inefficient on-Island freight regulation initiatives. Previous Certified Fiscal Plans had determined that both of them would significantly contribute to achieve the business environment that would allow Puerto Rico to adequately compete with other investment destinations. Please provide an explanation on the removal of the aforementioned initiatives and restore the language to include the details on the Government's plans to implement and track every initiative's progress and impact.

53.    The FOMB granted the Government until March 26, to submit the proposed Fiscal Plan with the required changes. This includes reestablishing the provisions related to the deregulation of land freight transportation rates in Puerto Rico, which implies the repeal of the Circular Letter.

54.    The Government did not respond to the request by the deadline. Consequently, on that day, Ms. Jaresko sent another letter to Mr. Marrero-Díaz, regarding the NTSP's violation of the October 2019 Policy established by the FOMB pursuant to PROMESA's § 204(b)(4) by failing to submit for review and approval by the Oversight Board the Regulation and the Circular Letter, while enforcing the tariffs stated in the latter. *See* letter dated March 26, 2021, copy of which is included as **Exhibit 4**.

55.    After recounting the instances in which the NTSP has been advised and instructed to submit the Regulation and Circular Letter for the approval of the Oversight Board, the latter, through its Executive Director, insisted with Mr. Marrero, again, that, consistent with AAFAF's statutory obligations,

> you enforce the directives AAFAF issued to NTSP on December 30, 2020, ensure the repeal of the Draft Regulations and both Circular Letters, and ensure NTSP desists from adjusting or implementing tariffs until it has complied with the Policy and the Oversight Board has reviewed and approved any such measures, …

56.    The Oversight Board further informed that,

> NTSP's actions continue to violate the Policy, established pursuant to section 204(b)(4) of PROMESA. In addition, NTSP's actions, including

the implementation and enforcement of the Draft Regulations and Circular Letters 5 and 35 adjusting tariffs regulated by NTSP impair and defeat the purposes of PROMESA, as determined by the Oversight Board. These actions reflect a continued disregard for PROMESA's requirements, as well as AAFAF's directives.

57.     On March 31, 2021, Codefendant Lafuente, as President of the NTSP, responded to the Oversight Board's letter of March 26. *See* copy of his letter, included as **Exhibit 2**. Codefendant Lafuente asserted, contrary to the determination of the FOMB and the Certified Fiscal Plan that "that the public interest will not be well served if we simply discard the progress achieved through the regulatory process conducted in connection with the Proposed Regulations by terminating the process altogether." *Id*., p. 2.

58.     Refusing to acknowledge and heed the authority and the requirements of the Oversight Board, Codefendant Lafuente, asserted that: "*prima facie*, the elimination of the on-island freight regulation and freight rates, as required by the Fiscal Plan, requires action by the Puerto Rico Legislature. Consequently, this matter is subject to public policy determinations and outside the scope and authority of the TPSB." *Id*., pp 2-3.

59.     As an additional excuse for not complying, Codefendant Lafuente stated in his letter that the regulatory action in question is being challenged by the Puerto Rico Chamber of Commerce in a Petition for Administrative Review before the Puerto Rico Court of Appeals and that the NTSP has no jurisdiction to act upon the Circular Letter.[2]

60.     The Circular Letters XXXV-2020 and V-2021, and Regulation 9156 have not only not been submitted to the FOMB for review and approval prior to become effective and enforceable, but the Oversight Board has determined that they "directly contradict the Fiscal Plan

---

[2] This is a frivolous excuse. Nothing bars the NTSP to stipulate with Petitioner the setting aside of the Circular Letter to complete the regulatory process and submit it to the FOMB for its review and approval. The stipulation would serve as the basis for Petitioner, the Chamber of Commerce, to request the voluntary dismissal or withdrawal of its Petition for Administrative Review, without prejudice. Jurisdiction returns to the Bureau and it can set aside the tariffs.

and the mandate to achieve fiscal responsibility".[3] Accordingly they "impair and defeat the purposes of PROMESA".[4] Consequently, they are null, void and unenforceable.

61.     Under the Act it is the FOMB that certifies the Fiscal Plan, be it the one submitted by the Governor or the one prepared by the former.  This absolute power has been recognized by the Federal Court of Appeals for the First Circuit in *Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. For P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 103 (1st Cir. 2019) ("PROMESA grants the Oversight Board exclusive authority to certify Fiscal Plans".) *Id*., p.112. That authority is not subject to judicial review pursuant to § 106 (e) of the Act.   That is, the courts do not have jurisdiction to do so. *Id*. The certification of the Fiscal Plan by the FOMB is final, firm and not reviewable.

62.     Pursuant to PROMESA's supremacy provision, not even the Constitution of the Commonwealth of Puerto Rico, much less any law or regulation, may limit or impede the power conferred on the Oversight Board to certify the Fiscal Plan.

63.     The Act gives the FOMB authority to ensure compliance with the Fiscal Plan.   For such purposes, the Oversight Board has the power to,

> review certain rules, regulations, and executive orders. **The provisions of this paragraph shall apply with respect to a rule, regulation, or executive order proposed to be issued by the Governor (or the head of any department or agency of the territorial government)** … (Our emphasis.)[5]

64.     The Act expressly prohibits the Governor and the Legislature to,

> enact, implement, or **enforce** any statute, resolution, **policy, or rule** that would **impair or defeat the purposes of this Act, as determined by the Oversight Board**. (Our emphasis.)[6]

---

[3] Letter dated December 24, 2020, **Exhibit 1**.
[4] Letter dated March 26, 2021, **Exhibit 4**.
[5] § 204(b)(4), 48 U.S.C. §2144(b)(4).
[6] § 108(a)(2), 48 U.S.C. §2128(a)(2).

65.     Under PROMESA, before a rule or regulation is effective and becomes enforceable, the agency has to previously submit it to the FOMB for it to evaluate whether the rule or regulation complies with the Fiscal Plan. If it were in compliance, the Oversight Board could approve it and then, and only after that, the regulatory provision would go into effect.

66.     The Certified Fiscal Plans, for both 2019-2020 and 2020-2021, require the elimination of rates for intra-island cargo transportation. This determination is not judicially reviewable. Both the Regulation and the rates adopted through the Circular Letter were not submitted to the FOMB for review and approval. In addition, the Oversight Board has expressed its rejection of such rates for being contrary to the Certified Fiscal Plan. Therefore, and by virtue of PROMESA's Sec. 108(b)(2), the NTSP is prevented from enforcing the Circular Letter tariffs.

67.     PROMESA precludes the Government of Puerto Rico from enacting, implementing, or enforcing "any statute, resolution, policy, or rule that would impair or defeat the purposes of [the] Act, as determined by the Oversight Board. [] Any Puerto Rico law to the contrary is preempted by virtue of PROMESA § 4, 48 U.S.C. § 2103." *Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3, 8 (1st Cir. 2019).

68.     Under PROMESA, "any action otherwise arising out of this Act, in whole or in part, shall be brought in a United States district court for the covered territory…". Article VI, Paragraph 2 of the United States Constitution establishes that the federal constitution and federal law, generally, take precedence over state laws, and even state constitutions. Therefore, the action would be under the U. S. Constitution, and the provisions of PROMESA, 48 USC §§ 2101 *et seq*.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT FINDING THE REGULATION
### AND THE CIRCULAR LETTERS NULL, VOID AND UNENFORCEABLE

69.     The allegations set forth in paragraphs 1 to 68 are adopted by reference and incorporated as part of this Cause of Action.

70.     PROMESA § 4 contains an express-preemption provision that provides that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act." *See* 48 U.S.C. § 2103.

71.     PROMESA further establishes that the Governor nor the legislature may "enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of this Act, as determined by the Oversight Board." *See* 48 U.S.C. § 2128.

72.     The Certified Fiscal Plan for 2020-2021 requires, in Section 10.6, i) the elimination of inefficient on-island freight regulation; and (ii) that the NTSP issue an administrative order eliminating the minimum land freight charge across Puerto Rico".

73.     The Regulation and the Circular Letter impairs and defeats the Certified Fiscal Plan for 2020-2021 in as much as they were enacted freight tariffs contrary to the specific mandate contained in Section 10.6 of the Plan; and the NTSP is enforcing the Regulation and the tariffs and has refused to issue the administrative order deregulating the freight charges.

74.     Accordingly, the Regulation and the Circular Letter are preempted by PROMESA.

75.     MIDA and its members have no adequate remedy at law available against Defendants for the infringement of the statutorily protected preemption rights that they will suffer if the Regulation and the Circular Letter remains in effect and is enforced.

76.     A declaratory judgment and permanent injunction constitute an appropriate

remedy in these circumstances, and it is within this Court's power to award such equitable relief.

## SECOND CAUSE OF ACTION
## IMPAIRMENT OF CONTRACTS

77.     The allegations set forth in paragraphs 1 to 76 are adopted by reference and incorporated as part of this Cause of Action.

78.     The Contracts Clause prohibits states from passing any law impairing the obligations of contracts. U.S. Const. art. I, § 10, el. l.

79.     By enforcing the Circular Letter and ordering MIDA's members to pay the tariffs established thereunder, including their carriers under private contracts in force, the Regulation and Circular Letter impair their contractual rights.

80.     The enforcement of the tariffs in those circumstances is an unconstitutional action of the NTSP, and, as such null and void.

81.     MIDA and its members have no adequate remedy at law available against Defendants for the infringement of its members constitutionally protected right under the U.S. Constitution's Contracts Clause to be free from substantial impairment of contractual obligations by states.

82.     A declaratory judgment and permanent injunction constitute an appropriate remedy in these circumstances, and it is within this Court's power to award such equitable relief.

## THIRD CAUSE OF ACTION
## MANDATORY PERMANENT INJUNCTION PROHIBITING DEFENDANTS
## FROM ENFORCING THE REGULATION AND THE CIRCULAR LETTER
## AND PROHIBITING THEM FROM IMPOSING ANY FINE OR SANCTION FOR
## ALLEGEDLY NOT COMPLYING WITH THE UNLAWFUL FREIGHT TARIFFS

83.     The allegations set forth in paragraphs 1 to 82 are adopted by reference and incorporated as part of this Cause of Action.

84.     By mandate of Congress, the provisions in PROMESA prevail over any general or specific provisions of Puerto Rico law or regulation that is inconsistent with the ACT. *Id.*

§ 4, 48 U.S.C. § 2103.

85.     Under PROMESA § 204(b) and the October 2019 Policy, the Regulation and the Circular Letter had to be previously submitted to the FOMB for its review and approval if they were not contrary to the certified Fiscal Plan.

86.     The NTSP, under the direction of Codefendant Lafuente has not submitted to the Oversight Board for its review and approval the Regulation and the Circular Letter in violation of PROMESA and the October 2019 Policy. Consequently, both the Regulation and the Circular Letter have not been adopted in conformity with the Act, are not effective, and as such are not valid or enforceable.

87.     The Certified Fiscal Plans for the years 2020 and 2021, approved by the FOMB pursuant to PROMESA and consistent with its legislative mandate, provide that there be no freight charges across Puerto Rico.

88.     The NTSP has been repeatedly informed, directly or indirectly, that this is required as part of improving the ease of doing business in the Commonwealth, thereby encouraging economic growth, broadening, and deepening the tax base, and increasing corresponding tax revenues, thereby helping the Commonwealth achieve fiscal responsibility consistent with PROMESA.

89.     The Regulation and the Circular Letter are null and void for being in violation of the Fiscal Plan as determined by the Oversight Board. Enforcing them impairs or defeats the purpose of PROMESA as previously described.

90.     Pursuant to PROMESA § 108(b) the Puerto Rico Executive and Legislative branches of government are not allowed to "enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of this Act, as determined by the Oversight Board."

91.     MIDA seeks equitable relief in the form of a mandatory permanent injunction ordering Defendants to cease and desist from applying and/or enforcing the Regulation and the Circular Letter or in any other way impairing or defeating the purposes of PROMESA. In particular, that they be enjoined from approving, enacting, implementing and/or promulgating any law, regulation, circular letter and/or order, temporary or permanent establishing freight tariffs across Puerto Rico.

92.     In violating PROMESA and the Certified Fiscal Plan, Defendants' actions (and inaction) are causing immediate irreparable harm to the members of MIDA. Specifically, by refusing to deregulate the freight tariffs and eliminate the unlawful tariffs object of this Complaint and by applying the tariff to the contractual relationship between MIDA's members and carriers by private contract.

93.     There is no adequate remedy at law to compensate the Oversight Board or the Commonwealth for the injury caused by the Defendants' actions. Unless Defendants are ordered to comply with PROMESA section 104(c)(2) and provide the FOMB with (or grant direct access to) the Contract Documents, the Defendants will continue to undermine the Oversight Board's authority and responsibility under PROMESA. An award of monetary damages will not serve to compensate MIDA's members for the injuries caused by the Defendants' actions because monetary damages can provide no substitute for the documents the Oversight Board seeks. In addition, an award of monetary damages will only cause further harm to the people of Puerto Rico because the payment of any award would come out of the Commonwealth's resources making less money available for public programs.

94.     The balance of hardship favors MIDA's members. Defendants will not be harmed by deregulating the freight transportation industry and eliminating the unlawful tariffs. Defendants' failure to do so will cause direct injury to MIDA's members by being

forced to materially increase their costs with the foreseeable damage to the Puerto Rico's economy, including the consumers, primary purchasers of the products distributed and/or produced by MIDA's members, in open contradiction with PROMESA's purposes.

95.   The public interest, as defined in PROMESA, would be well-served by the entry of a mandatory permanent injunction. In particular, an injunction ordering Defendants to comply with PROMESA and the Certified Fiscal Plan, and to deregulate the freight tariff and not to enforce the Regulation and the Circular Letter.

96.   The present action arises out of the violation of PROMESA by Defendants. Actions and omissions that are the direct cause of MIDA's members damages. Therefore, under PROMESA § 106(a) the present action has to be brought in this Court, who has the authority to issue the requested remedy under the Rules of Civil Procedure.

97.   Therefore, MIDA is entitled to a mandatory permanent injunction ordering Defendants to comply with PROMESA and the Certified Fiscal Plan, and to deregulate the freight tariffs and not to enforce the Regulation and the Circular Letter.

**WHEREFORE**, plaintiff respectfully requests that this Honorable Court:

a.   enter a judgment in Plaintiff's favor pursuant to 28 U.S.C. § 2201(a) declaring that the Regulation and the Circular Letter are null and void as being preempted by PROMESA;

b.   enter a judgment in Plaintiff's favor pursuant to 28 U.S.C. § 2201(a) declaring that the Regulation and the Circular Letter are null and void as an unconstitutional infringement of MIDA's members rights under existing contracts.

c.   permanently enjoin Defendants, or anyone acting under the authority or on behalf of Defendants, from enforcing or implementing NTSP's Regulation 9156 and/or Circular Letter XXXV-2020;

d.   a speedy hearing of this action under Rule 57 of the Federal Rules of Civil Procedure;

e.   an award of attorney's fees, costs, and expenses of all litigation; and

f.   such other and further relief as the Court deem proper and just.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 8th day of April 2021.

> **SANCHEZ BETANCES, SIFRE**
> **& MUÑOZ NOYA**
> Counsel for MIDA
> PO Box 364428
> San Juan, PR 00936-4428
> Tel. (787) 756-7880 / Fax (787) 753-6580
>
>
> *S/Luis Sánchez Betances*
> **Luis Sánchez Betances**
> USDC-PR No. 117410
> lsb@sbsmnlaw.com

22

## VERIFICATION

I am the Executive Vice President of Cámara de Mercadeo, Industria y Distribución de Alimentos (MIDA). I have read the foregoing Complaint and know the contents thereof, and, based on my personal knowledge, I verify under penalty of perjury that the same are true and correct.

Executed on April 8, 2021

_____
Manuel Reyes Alfonso