**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CÁMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCIÓN DE ALIMENTOS, INC. <br><br> **Plaintiff,** <br><br> v. <br><br> DOMINGO EMANUELLI-HERNÁNDEZ, in his official capacity as Attorney General for the Commonwealth of Puerto Rico, and JAIME A. LAFUENTE GONZÁLEZ, in his official capacity as president of the Bureau of Transportation and other Public Services of the Commonwealth of Puerto Rico <br><br> **Defendants.** | **CIVIL NO. 21-1156 (RAM)** |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants Domingo Emanuelli-Hernández and Jaime A. Lafuente-González's ("Defendants") *Motion to Dismiss Second Amended Complaint, Pursuant to Federal Civil Procedure Rules 12(b)(1) and 12(b)(6)* ("*Motion to Dismiss*"). (Docket No. 73). For the reasons discussed below, Defendants' *Motion to Dismiss* is **GRANTED** and Cámara de Mercadeo, Industria y Distribución de Alimentos, Inc.'s ("MIDA" or "Plaintiff") *Second Amended Complaint* at Docket No. 71 is hereby **DISMISSED**.

## I.   PROCEDURAL BACKGROUND

In this case, MIDA seeks to void freight tariffs enacted by the Transportation and Other Public Services Bureau ("NTSP" for

its Spanish acronym) to be imposed on carriers with private contracts in Puerto Rico. (Docket No. 71 at 2). Plaintiff maintains that the NTSP's Regulation No. 9293 of July 23, 2021; Regulation No. 9156 of January 30, 2020; and Circular Letter XXXV-2020 of December 23, 2020 are unlawful under the Puerto Rico Oversight Management and Economic Stability Act ("PROMESA" or the "Act"), 48 USC §§ 2101 *et seq.*, because they contravene the 2020 and 2021 certified Fiscal Plans and were not approved by the Fiscal Oversight and Management Board ("FOMB" or "Oversight Board") as required by the Act. Id. MIDA argues that the application of these regulations will cause great uncertainty and damages and will constitute a violation of the Contracts Clause of the United States Constitution. Id. ¶¶ 77 and 82. Accordingly, Plaintiff filed a lawsuit against the Attorney General of the Commonwealth of Puerto Rico (Domingo Emanuelli-Hernández) and the President of the NTSP (Jaime A. Lafuente-Gonzalez), in their official capacity. (Docket Nos. 1 and 71). In the operative complaint, MIDA requests declaratory judgment finding the freight tariffs null and void as well as injunctive relief barring Defendants from enforcing said tariffs or any sanctions for failing to comply with them. (Docket No. 71 ¶¶ 69-102).

The Department of Justice of Puerto Rico, on behalf of Defendants, moved for dismissal on various grounds. (Docket No. 73). First, Defendants posit that MIDA lacks standing because

PROMESA does not allow for third parties to intervene in the process of assessing whether a government action complies with the certified Fiscal Plans or the Act. Id. at 11. Second, Defendants argue Plaintiff failed to articulate an "injury in-fact," and instead only proffered that it faces an abstract threat of harm to its business. Id. at 7. Third, Defendants contend that Plaintiffs failed to adequately plead impairment of a contractual relationship and thus cannot assert a contracts clause violation claim. Id. at 21. Lastly, Defendants affirm that the controversy is unripe, that the Court lacks subject matter jurisdiction over the same, or, in the alternative, should abstain from the present controversy. Id. at 12-19; 23-24.

Plaintiff filed a *Response in Opposition to Defendants' Motion to Dismiss* ("*Response*") where MIDA reiterates its allegation that the NTSP's Regulations are preempted by PROMESA. (Docket No. 80). Furthermore, MIDA avers that the threatened enforcement of the regulations suffice as an imminent injury in fact. Id. at 6.

On September 28, 2021, Defendants filed their *Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Second Amended Complaint* ("*Reply*") asserting, among other arguments, that "PROMESA is devoid of any provision that expressly declares federal preemption over the Commonwealth's authority to regulate freight cargo transportation." (Docket No. 83 at 2).

Civil No. 21-1156(RAM)                                              4

## II.   LEGAL STANDARD

### A. Dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1):

Federal courts are courts "of limited jurisdiction, limited to deciding certain cases and controversies." Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 21 (1st Cir. 2016). The "party asserting jurisdiction has the burden of demonstrating its existence." Fina Air Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008). Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. A defendant may challenge the existence of subject matter jurisdiction either through a "facial attack" or a "factual attack." Id.

"In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction." Compagnie Mar. Marfret v. San Juan Bay Pilots Corp., 532 F. Supp. 2d 369, 373 (D.P.R. 2008) (quotation omitted). The court must take all the allegations in the complaint as true and determine if the plaintiff sufficiently evinced a basis of **subject matter jurisdiction**. See Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). Whereas "a factual attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." Compagnie Mar. Marfret, 532 F. Supp. 2d at 373 (quotations omitted). When facing a factual attack, the court is "not confined to the allegations in the complaint and

'can look beyond the pleadings to decide factual matters relating to jurisdiction.'" Rivera Torres v. Junta de Retiro Para Maestros, 502 F. Supp. 2d 242, 247 n.3 (D.P.R. 2007) (quotation omitted).

### B. Dismissal for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6):

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), the plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, […] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations marks, citations and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. See Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). They may also consider: "(a)

'implications from documents' attached to or fairly 'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (quotation omitted).

### III. OPERATIVE FACTS

Pursuant to the standards governing dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the following facts, derived from the non-conclusory allegations in the *Second Amended Verified Complaint* and its exhibits, are taken as true for purposes of this motion:

1. MIDA is a non-profit organization created to defend and represent the interests of the food distribution and sales industry (*i.e.*, wholesalers, retailers, distributors, processors, agro-industrial companies, and affiliates) in Puerto Rico. (Docket No. 71 ¶¶ 1-2).

2. Members of MIDA directly or indirectly transport goods, to and from their businesses, utilizing freight transportation entities. Id. ¶ 5.

3. On May 9, 2019, the FOMB certified the 2019 Fiscal Plan which identified that deregulating on-Island freights would lower the overall cost of doing business on the Island and strengthen the business environment. Id. ¶ 15.

4. On October 31, 2019, the Oversight Board revised the *FOMB Policy: Review of Rules, Regulations, and Orders Policy*. <u>Id.</u> ¶ 16.[1]

5. On January 2020, the NTSP submitted a new Code of Regulations to the Puerto Rico Department of State, catalogued as Regulation No. 9156 of January 30, 2020 ("Regulation 9156"), without prior review and approval by the FOMB. <u>Id.</u> ¶¶ 17-18.

6. On May 27, 2020, the Oversight Board certified the 2020 Fiscal Plan for Puerto Rico ("2020 FP"). Said Fiscal Plan states that "[i]nefficient [freight] regulations have inflated transportation costs for business across the Island." Accordingly, among the reforms to facilitate doing business in Puerto Rico, the 2020 FP lists eliminating "inefficient on-Island freight regulations by ending the minimum land freight charge across the Island[.]" <u>Id.</u> ¶¶ 19-20.

7. Moreover, the 2020 FP provides that:

> The deregulation of land freights would reduce transportation costs for the Puerto Rican business community. For nearly 100 years, the federal Interstate Commerce Commission regulated land freights across the US, creating artificial price floors to support the railroad and trucking industries and protect them from competition. The elimination of those price floors reduced the cost of truckload-sized shipping costs by 25% between 1977 and 1982 alone.

---

[1] *See* <u>FOMB Policy: Review of Rules, Regulations, and Orders</u> (revised October 31, 2019), https://drive.google.com/file/d/1WqEoSQSo7VhXybHbqJK8MTidkQyjrwIv/ view (accessed on November 15, 2021).

Id. ¶ 21.

8. On December 23, 2020, the NTSP adopted *Circular Letter XXXV-2020 – Adoption of Temporary Rates* ("CL-35"), which increased tariffs for several categories of transportation, imposed new categories of administrative fines, and set a minimum wage for Commercial Motor Vehicle Operators. Id. ¶ 22.

9. In response, the FOMB issued a letter to Mr. Omar Marrero, the Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority, asserting:

> The NTSP's actions directly contradict the Fiscal Plan and the mandate to achieve fiscal responsibility. The Fiscal Plan includes certain structural reforms, including improving the ease of doing business on the island. One of the specific measures to advance this reform is "an administrative order eliminating the minimum land freight charge across Puerto Rico." This measure is intended to improve the ease of doing business in the Commonwealth, thereby encouraging economic growth, broadening and deepening the tax base, and increasing corresponding tax revenues, thereby helping the Commonwealth "achieve fiscal responsibility." See PROMESA § 101(a). By increasing the same tariffs the Fiscal Plan seeks to eliminate, the Administrative Order is directly inconsistent with the Fiscal Plan.
>
> Based on the foregoing, it is clear that the Administrative Order impairs or defeats PROMESA's purposes, especially by increasing transportation costs, contrary to the Fiscal Plan and contrary to the need to attract business for economic growth by lowering the cost of commerce and doing business.
>
> […]
>
> We therefore request you intercede to repeal the Administrative Order and prevent the NTSP from

> implementing the Draft Regulations until the Oversight Board has reviewed and approved them. Please confirm you will do so and a timeline for the reinstallation of the prior tariff regime as soon as possible.

(Docket No. 71 ¶¶ 26-27; 71-1 at 3-4).

10. On March 9, 2021, co-defendant Jaime A. Lafuente-González signed Circular Letter V-2021, without prior review or approval from the FOMB, adopting the freight tariffs in CL-35 and imposing a fine of $10,000 for failure to comply with said tariffs. (Docket No. 71 ¶¶ 28-29).

11. The Oversight Board subsequently sent various letters regarding the NTSP's failure to subject the regulations for review and approval by the Board. Id. ¶¶ 32-34, 39.

12. On April 12,2021, the Commonwealth Court of Appeals entered Judgment in the case Camara de Comercio de Puerto Rico v. NTSP, KLRA2021-00021, finding CL-35 null and void for having been approved without complying with the process prescribed by the Puerto Rico Uniform Administrative Procedure Act ("LPAU" for its Spanish acronym) for new regulations.[2]

13. On April 23, 2021, the FOMB issued and certified the 2021 Fiscal Plan for Puerto Rico ("2021 FP"), which "recommends

---

[2] The Court takes judicial notice that on August 9, 2021, the Puerto Rico Supreme Court issued a Resolution denying the NTSP's request for certiorari. See Camara de Comercio de P.R. v. N.T.S.P., Case No. CC2021-0384. (Docket No. 80-1). Thus, the Appeals Court's judgment finding CL-35 null and void is final. Nevertheless, a justiciable case or controversy subsists because the NTSP subsequently reenacted the freight tariffs.

the Government retract the extension of the tariff setting function of the NTSP to private contracts. The NTSP should maintain regulatory responsibilities over the previously covered segments of the economy that hauled cargo in spot transactions, without including private contracts." Id. ¶¶ 47, 49.

14. Furthermore, the 2021 FP specifies that to successfully "deregulate on-Island freights, the Government should accomplish" certain required implementation actions including "[r]everting tariff application to companies with contracts with carriers" by April 30, 2021. Id. ¶ 51.

15. Said Fiscal Plan specifies in its initial disclosures that this request should not be considered a "recommendation" under § 205 of PROMESA, 48 U.S.C. § 2145. Id. ¶¶ 47, 50.

16. On June 11, 2021, the NTSP submitted a proposed Code of Regulations to the FOMB for review. Id. ¶ 55.

17. The Oversight Board informed the NTSP on June 21, 2021 that it would need additional information to conduct its review of the regulations. Id. ¶ 56.

18. On July 19, 2021, the FOMB asked the NTSP to submit various documents and reminded the NTSP that it "may not implement the proposed Regulation until the Oversight Board finishes its review and concludes the Proposed Regulation is compliant

with the applicable fiscal plan." (Docket No. 71 ¶ 57; 71-5).

19. Upon receiving the requested document and concluding its review, the FOMB informed the NTSP that the proposed regulation was not in compliance with the 2021 FP. (Docket No. 71 ¶¶ 58-59).

20. Despite this determination, the NTSP approved the new Code of Regulations, which included freight tariffs, and filed it with the Puerto Rico Department of State, being catalogued as Regulation No. 9293 ("Regulation 9293"). Id. ¶ 60.

## IV.   ANALYSIS

### A. Approving, Rejecting, and Enjoining Regulations under PROMESA

Section 204(b) of PROMESA authorizes the FOMB to "establish policies to require prior Oversight Board approval of certain contracts" to ensure that they "promote market competition and are not inconsistent with the approved Fiscal Plan." 48 U.S.C. § 2144(b)(2). This authority extends to rules, regulations, and executive orders "proposed to be issued by the Governor (or the head of any department or agency of the territorial government) in the same manner as such provisions apply to a contract." 48 U.S.C. § 2144(b)(4); see also United States v. Lopez-Martinez, 2020 WL 5629787, at *30 (D.P.R. 2020).

In accordance with these provisions, the Oversight Board approved the *FOMB Policy: Review of Rules, Regulations, and Orders*

(the "Policy"), as amended. (Fact ¶ 4). Therein, the Oversight Board explains that it has the authority to review "any proposed rule, regulation, administrative order, or executive order that is issued which has the potential to impact fiscal governance, accountability, or internal controls under the applicable Certified Fiscal Plan[]" to ensure it is consistent with said Fiscal Plan. Id. at 1-2.

Under the revision process established by the Policy, an English version of the rule, regulation, administrative or executive order must be sent to the FOMB before it is issued by the relevant agency. Id. at 2. Additionally, the promulgating agency must explain how it complies with the applicable fiscal plan. Id. On their part, the FOMB will respond within five business days of receipt by approving, rejecting, or requesting additional information. Id. If the FOMB does not respond within this time frame, the agency may proceed to issue the proposed action. Id.

If a contract, rule, regulation, or executive order does not comply with the policies established by the FOMB under Section 204(b), "**the Oversight Board may take such actions as it considers necessary** to ensure that such contract, rule, executive order or regulation will not adversely affect the territorial government's compliance with the Fiscal Plan, **including by preventing the execution or enforcement** of the contract, rule, executive order or regulation." 48 U.S.C. § 2144(b)(5) (emphasis added). To this end,

PROMESA expressly gives the FOMB the right to "judicial relief thwarting actions that the Oversight Board has determined frustrate or impair the purposes of PROMESA[.]" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 4768715, at *2, n. 7 (D.P.R. 2021); see also 48 U.S.C. § 2152.

There is no doubt that PROMESA's provisions "shall prevail over any general or specific provisions of territory law ... or regulation that is inconsistent[.]" 48 U.S.C. § 2103. However, nothing in the Act nor the Policy provides that a regulation that is inconsistent with a Certified Fiscal Plan is null and unenforceable on its face, in the absence of additional action on behalf of the Oversight Board.

Plaintiffs do not cite, and the Court has not found, caselaw wherein the FOMB took action to prevent the execution or enforcement of a regulation under Section 204(b). Nevertheless, there are instances in which the Oversight Board has used its authority under Section 204(a)(5) to invalidate legislation. Rather than authorizing the FOMB to create a policy to review laws, PROMESA codifies the process by which the Puerto Rico government must submit proposed legislative acts for Oversight Board approval. See 48 U.S.C. § 2144(a). Namely, by using similar language to that one found in § 2144(b)(5), this section outlines the FOMB's power to thwart the implementation of laws that do not comply with PROMESA, providing that it "may take such actions as

it considers necessary, consistent with this chapter, to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law." 48 U.S.C. § 2144(a)(5).

Pursuant to this provision, the FOMB has repeatedly initiated, and subsequently prevailed in, legal actions requesting that the court nullify as well as bar the implementation and enforcement of laws inconsistent with PROMESA and the applicable Fiscal Plan. *See e.g.*, In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 4768715, at *4 (granting the FOMB's request to enjoin and nullify provisions of Act 7-2021 for being inconsistent with PROMESA and fiscal plans); In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 616 B.R. 238 (D.P.R. 2020).

Here, the Oversight Board notified the NTSP that its regulations regarding freight tariffs are inconsistent with the applicable Fiscal Plan. But, the FOMB has **not** taken further action to invalidate the tariffs and prevent their execution pursuant to Section 204(b)(5). (Fact ¶ 19). Therefore, contrary to Plaintiff's contentions, the freight tariffs have **not** been declared null and unenforceable.

## B. PROMESA does not create a private cause of action

The threshold question before the Court thus becomes whether MIDA, *instead of the Oversight Board*, can file an action to nullify

and enjoin the NTSP's regulations for failing to comply with the Certified Fiscal Plan and the Policy, as required by the Act. Put simply, the Court must determine whether PROMESA creates a private cause of action so that third parties can seek to void regulations inimical to a Certified Fiscal Plan. In their *Motion to Dismiss*, Defendants' main argument is that the FOMB is the *sole* entity authorized to determine if a government action violates the Fiscal Plan and should consequently be deemed null under PROMESA. (Docket No. 73 at 8). The Court agrees.

"[P]rivate rights of action to enforce federal law must be created by Congress." Gonzalez-Hugues v. Puerto Rico, 2013 WL 149621, at *2 (D.P.R. 2013); *see also* Atl. Richfield Co. v. Christian, 140 S. Ct. 1335, 1350 (2020) (quotation omitted) ("[A] suit arises under the law that creates the cause of action."); Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979). However, if the federal law in question "does not grant a plaintiff a private right of action, the court must consider whether there exists an *implied* federal right of action." Lopez-Ramos v. Cemex de Puerto Rico, Inc., 2020 WL 5224190, *4 (D.P.R. 2020). The Supreme Court has specified that when deciding whether to recognize an implied cause of action, the determinative question is one of statutory intent. *See* Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017) (quotation omitted). Therefore, "[i]f the statute itself does not 'displa[y] an intent' to create 'a private remedy'

then 'a cause of action does not exist **and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute**.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 286-287 (2001)) (emphasis added). This is consistent with Supreme Court precedent which for decades has held that the court's task "is limited solely to determining whether Congress intended to create the private right of action asserted[.]" Touche Ross, 442 U.S. at 568.

Congress enacted PROMESA on June 30, 2016 "to address Puerto Rico's 'fiscal emergency' created by a 'combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 4768715, at *2 (quoting 48 U.S.C. § 2194(m)). The Act created the Oversight Board and specified that its purpose is "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a). Accordingly, PROMESA grants the FOMB broad powers to fulfill its mandate. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico 2021 WL 4768715, at *2. Specifically, Section 204(b) provides the following:

> **(1) Transparency in contracting**
>
> The Oversight Board shall work with a covered territory's office of the comptroller or any functionally equivalent entity to promote compliance with the applicable law of any

covered territory that requires agencies and instrumentalities of the territorial government to maintain a registry of all contracts executed, including amendments thereto, and to remit a copy to the office of the comptroller for inclusion in a comprehensive database available to the public. With respect to Puerto Rico, the term "applicable law" refers to 2 L.P.R.A. 97, as amended.

**(2) Authority to review certain contracts**

The Oversight Board may establish policies to require prior Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government, to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan.

**(3) Sense of Congress**

It is the sense of Congress that any policies established by the Oversight Board pursuant to paragraph (2) should be designed to make the government contracting process more effective, to increase the public's faith in this process, to make appropriate use of the Oversight Board's time and resources, to make the territorial government a facilitator and not a competitor to private enterprise, and to avoid creating any additional bureaucratic obstacles to efficient contracting.

**(4) Authority to review certain rules, regulations, and executive orders**

The provisions of this paragraph shall apply with respect to a rule, regulation, or executive order proposed to be issued by the Governor (or the head of any department or agency of the territorial government) in the same manner as such provisions apply to a contract.

**(5) Failure to comply**

> If a contract, rule, regulation, or executive
> order fails to comply with policies
> established by the Oversight Board under this
> subsection, the Oversight Board may take such
> actions as it considers necessary to ensure
> that such contract, rule, executive order or
> regulation will not adversely affect the
> territorial government's compliance with the
> Fiscal Plan, including by preventing the
> execution or enforcement of the contract,
> rule, executive order or regulation.

48 U.S.C. § 2144(b).

An analysis of the text of the Act reveals that there is no evidence of congressional intent to authorize third parties, such as MIDA, to enforce the terms of a Certified Fiscal Plan. Rather, PROMESA **solely vests the Oversight Board** with the authority to review and act to prevent the implementation of rules and regulations which contravene Certified Fiscal Plans. *See* 48 U.S.C. § 2144(b)(5). Notably, the Supreme Court has elucidated that "[t]he express provision of one method of enforcing a substantive rule **suggests that Congress intended to preclude others**[,]" such as a private right of action. <u>Sandoval</u>, 532 U.S. at 290. *See also* <u>Love v. Delta Air Lines</u>, 310 F.3d 1347, 1357 (11th Cir. 2002) ("The explicit provision of these elaborate enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly.").

MIDA has not identified *any* case law for the contrary proposition, despite the arguments raised by Defendants in their

*Motion to Dismiss*. Moreover, the Court has found no case law wherein a private party has asserted a right to enjoin and nullify a regulation for failure to comply with PROMESA, let alone succeeded in doing so. "Where, as here, a federal statute does not state whether [a plaintiff] may bring a civil action in district court to allege a violation of that federal law, '**implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.**'" Lopez-Ramos, 2020 WL 5224190, *8 (citing Touche Ross, 442 U.S. at 571) (emphasis added). Accordingly, the Court finds that Section 204(b) of PROMESA **does not create an express or implied private cause of action** to proceed before a United States District Court for violations to a Fiscal Plan adopted pursuant to PROMESA.

## C. Plaintiff has not articulated a contract clause claim

In addition to seeking declaratory and injunctive relief, MIDA also asserts a claim pursuant to the Contract Clause of the United States Constitution. The Contract Clause "protects individuals and legal entities who have freely entered into contracts from legislative action that impairs the obligations under those contracts." Universal Ins. Co. v. Dep't of Just., 866 F. Supp. 2d 49, 67 (D.P.R. 2012), on reconsideration in part (June 22, 2012) (citing Rooker v. Fidelity Trust Co., 261 U.S. 114, 118 (1923)). Specifically, it dictates that: "[n]o State shall … pass

any … Law impairing the Obligation of Contracts." U.S. Const. art. I., § 10, cl. 1.

When reviewing a Contract Clause claim, the following two-part test applies. First, the reviewing court must "decide whether a change in state law has resulted in the 'substantial impairment of a contractual relationship.'" Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 173 F.3d 46, 59 (1st Cir. 1999) (quoting General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992)). This inquiry consists of "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Romein, 503 U.S. at 196. Second, if the court concludes that a substantial impairment occurred, it must then "determine whether the impairment is nonetheless justified as 'reasonable and necessary to serve an important public purpose.'" Id. (quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977)).

Defendants posit that Plaintiff did not plead sufficient facts to support their Contract Clause claim because they failed to: (1) sufficiently describe contractual provisions impaired; (2) demonstrate the extent of any impairments represented by the NTSP regulations; and/or (3) assert that the regulations were unreasonable. (Docket No. 73 at 20-21).

In UAW v. Fortuño, the First Circuit explained "that where plaintiffs sue a state—or in this case the Commonwealth of Puerto Rico—challenging the state's impairment of a contract to which it is a party, the plaintiffs bear the burden on the reasonable/necessary prong of the Contract Clause analysis." United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 46 (1st Cir. 2011). Moreover, the First Circuit clarified that "[m]erely listing the subject matter covered by the contractual provisions at issue is of little help" to survive a motion to dismiss. Id.

Here, MIDA's conclusory allegations of a Contract Clause violation without detailing the nature of contracts at issue or the extent of the impairment is insufficient to meet the first prong. Even assuming, *arguendo*, that Plaintiff had met this initial burden, the operative *Complaint* is silent regarding the reasonability of the freight tariffs, and thus fails at the motion to dismiss stage.

### V. CONCLUSION

In light of the above, the Court hereby **GRANTS** Defendants' *Motion to Dismiss* at Docket No. 73. MIDA's claims pursuant to Section 204(b) of PROMESA requesting (1) declaratory judgment finding the NTSP's regulations null and void; and (2) injunctive relief prohibiting NTSP from imposing said regulations and sanctions for failure to comply are hereby **DISMISSED WITH PREJUDICE**

Civil No. 21-1156(RAM)                                               22

because the Act does not create a private cause of action to
enforce its provisions. Additionally, Plaintiff's Contract Clause
violation claim is **DISMISSED WITHOUT PREJUDICE**. Judgment shall be
entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of November 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge